**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
*kevin@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Tel: 310.861.7797

**KLA LEGAL LLP**
Jill H. Fertel (*pro hac vice* application forthcoming)
*jill.fertel@klalegal.com*
Conor J. Hafertepe (*pro hac vice* application forthcoming)
*conor.hafertepe@klalegal.com*
325 Sentry Parkway, Building 5 West Ste. 200
Blue Bell, PA 19422
Tel:610.472.0240

*Attorneys for Defendant*
*PlushCare, Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ROBERT PERKINS, individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

PLUSHCARE, INC.,

Defendant.

Case No. 5:25-cv-03162

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**

Date: September 25, 2026
Time: 2:00 p.m.
Location: Zoom Videoconference Before Judge Sunshine Suzanne Sykes

Complaint Filed: 11/24/25
Complaint Amended: 3/25/26
Trial Date: None Set

Defendant PlushCare, Inc. (hereinafter "PlushCare"), by and through its undersigned counsel, hereby submits this Reply in further support of its Motion to Dismiss ("MTD") Plaintiff's First Amended Class Action Complaint ("FAC") and hereby incorporates its factual background and procedural posture as set forth in its Motion to Dismiss[1].

## I. INTRODUCTION

The facts of this case are simple: PlushCare contracts with third-party software providers Segment and Criteo to provide internal data analytics for PlushCare. PlushCare shares data about its website users with Segment and Criteo, which process and analyze the data for PlushCare's internal use. PlushCare informs its users of this sharing through its Privacy Policy and Terms of Use, which users are required to agree to at multiple points during their visits to PlushCare's website and apps. PlushCare uses the insights from this data analysis to improve its platform and reach new patients.

To avoid dismissal, Plaintiff contorts this simple business relationship through implausible assumptions and speculations. According to Plaintiff, PlushCare is not providing data to a third-party contractor for data analytics services but is facilitating an "illegal wiretap" for third parties to steal Plaintiff's communications with PlushCare for their own benefit. Plaintiff also alleges that Segment and Criteo are undertaking to de-anonymize data and use it to drive targeted advertisements in direct breach of their contracts with PlushCare. Plaintiff further contends that PlushCare knows Segment and Criteo are breaching these contracts in this way and is facilitating these breaches all while purposefully withholding disclosure of these practices. Such claims lack any factual basis and amount to no more than conjecture. As such, Plaintiff's claims wholly fail to satisfy the 12(b)(6) plausibility standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679

[1] PlushCare further incorporates all arguments set forth in its Motion to Dismiss. To the extent that any such argument is not addressed in this Reply, PlushCare asserts that such argument has not been waived.

(2009) ("to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'")

Two facts are dispositive to this motion: (1) Plaintiff clicked a button indicating consent to the PlushCare's Terms of Use and Privacy Policy before sharing private information with PlushCare; and (2) Segment and Criteo are contractually obligated to not de-anonymize data or use data for any purpose other than as instructed by PlushCare. In Plaintiff's Opposition to Defendant's Motion to Dismiss (the "Opposition"), Plaintiff does not outright deny these dispositive facts but instead tries to avoid them by creating fictitious loopholes. The Court should reject such arguments and dismiss Plaintiff's claims.

## II. ARGUMENT

### A. Conversion to Summary Judgment is Not Premature

Plaintiff argues that PlushCare's Motion to Dismiss should not be converted to Summary Judgment because he has not had the opportunity to conduct discovery. But Plaintiff had notice of the possible conversion and documents before PlushCare filed its Motion to Dismiss. Plaintiff also does not dispute the validity of the BAAs nor the declaration, which he references throughout his Opposition. *See, e.g.,* Opp. at pp. 21, 34. Moreover, Plaintiff has failed to identify any facts that could be revealed in discovery and why those facts would preclude summary judgment. Accordingly, conversion to summary judgment is not premature. *See, e.g., Silk v. Metropolitan Life Ins. Co.*, 477 F. Supp. 2d 1088, 1091 (C.D. Cal. 2007) (conversion to summary judgment proper where the parties were afforded reasonable notice, Plaintiff referenced extraneous materials in his opposition, and no party prejudiced by conversion); *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 922 (9th Cir. 2004) (converting motion to summary judgment where parties had sufficient notice).

### B. Plaintiff Consented to Collection of Private Data

When a user accesses the PlushCare App, before any information is collected, the user is brought to a page labeled "Consent Policy" featuring large links to PlushCare's

Terms of Use and Privacy Policy and a button that says "I agree" at the bottom. *See* MTD at Ex. A-3. Plaintiff does not allege that any private information was shared before this consent screen, and he does not allege that he did not click "I accept" on this screen. Rather, he claims that this consent is invalid because additional text below the hyperlinks to the Privacy Policy and Terms of Use ask the user to agree to device feature permissions. *See* Opp. at 11–15. Plaintiff's argument fails because when evaluating the sufficiency of notice for consent, a court must evaluate the "full context of the transaction." *Keebaugh v. Warner Bros. Ent., Inc.*, 100 F.4th 1005, 1017 (9th Cir. 2024). Here, a user accessing a medical app for the purposes of telehealth is confronted with a streamlined screen titled "Consent Policy." At the very top of the page are conspicuous links to the Terms of Use and Privacy Policy and at the bottom is a button labeled "I agree." Any reasonable user would be put on notice of the Terms of Use and Privacy Policy and would understand that by clicking "I agree" they are agreeing to the terms therein, even if the text below the links asks them to accept other terms as well. *See, id.* Plaintiff clearly consented to the Terms of Use and Privacy Policy when he clicked "I agree" on the Consent Policy page.

On PlushCare's website, Plaintiff argues that the cookie banner is not valid consent and the appointment booking consent only comes *after* private information has been collected. *See* Opp. at pp. 5–10, 15–17. However, Plaintiff consents to PlushCare's Privacy Policy and Terms of Use at three distinct points before making an appointment on the website: (1) the initial notice, provided by the cookie banner; (2) the clickwrap consent when creating a profile; and (3) the clickwrap consent when booking an appointment. *See* MTD at pp. 18–27. Each is sufficient to show that Plaintiff consented to the collection.

Moreover, in his Opposition, Plaintiff also ignores the most important of the three—the consent given at profile creation. Prior to profile creation, PlushCare collects only anonymized browsing information. A user can review doctors and appointment times, but once an appointment time is selected, the user is prompted to create a profile.

The profile creation page prompts the user to input information, but none is collected until the user consents and creates a profile. *See* MTD at Ex. F. In *Cousin v. Sharp Healthcare,* the court drew a distinction between a defendant collecting "routine browsing activity"—such as button clicks and standard events—which it determined was "routine commercial behavior and not highly offensive," and a defendant collecting sensitive health information collected from an appointment scheduling page—including the patient's medical condition, prescriptions and diagnoses—which it found was "highly offensive sufficient to withstand dismissal." *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1126–27 (S.D. Cal. 2023). Here, the information collected prior to profile creation was mere anonymized browsing data that is not actionable. *See id.* Only *after* the user consents does PlushCare collect confidential medical information. Accordingly, Plaintiff consented to the collection and disclosure of any actionable data, and his claims must be dismissed.

**C. <u>The BAAs Completely Repudiate Plaintiff's Claims</u>**

Plaintiff's claims rely on two completely implausible assumptions: (1) Segment and Criteo are deanonymizing PlushCare's data; and (2) Segment and Criteo are using the data for their own commercial benefit. Because Plaintiff provides no factual support that this conduct is *actually* occurring, these conclusory assertions should be disregarded by this Court. However, should the Court consider these allegations, PlushCare has requested this Court also consider the BAAs and convert this motion to one for summary judgment. The BAAs repudiate Plaintiff's claims by proving that Plaintiff's assumptions <u>are not occurring</u>. Plaintiff does not dispute the validity of the BAAs, arguing only that they should be ignored. *See* Opp. at 33–34. This Court should deny Plaintiff's request, consider the BAAs, and dismiss Plaintiff's claims.

Plaintiff admits that the information collected before profile creation is anonymized and hashed. *See* Opp. at p. 19. Knowing that Plaintiff has no privacy interest in anonymized data, he relies on the fact that it is *technically possible* for data

to be de-anonymized or tied to identifiable information[2] and speculates—with no factual support—that such de-anonymization is occurring. The BAAs negate these speculative allegations. [redacted] The BAAs show that PlushCare only provided anonymous data to Segment and Criteo with the expectation that it would not be de-identified. Plaintiff speculates that Segment and Criteo are violating their express agreements with PlushCare by de-anonymizing data and using it to enrich themselves. Plaintiff also alleges that PlushCare *knows* they are violating their BAAs and is facilitating such violations. The BAAs demonstrate that these allegations lack credulity. Plaintiff has no privacy interest in this anonymous information, and therefore his claims fail.

Similarly, the BAAs refute Plaintiff's baseless claims that Segment and Criteo are using the data provided by PlushCare to enrich themselves through targeted advertising, and that PlushCare knew this when it provided them the data. [redacted] Despite this clear and binding language, Plaintiff relies on *Tate v. VITAS Healthcare Corp*., 762 F. Supp. 3d 949, 957–58 (E.D. Cal. 2025) to argue that the BAAs are

[2] Plaintiff argues that the information is not anonymous because unique IDs are anonymized until the user creates a profile at which point the information is tied to user information. But if a user never creates a profile, the information is never tied to user information and remains anonymous. If the user creates a profile, he consents to the collection and disclosure of the information. This does not render the anonymous data "identifiable" pre-consent.

irrelevant and the Court should rely on Segment and Criteo's Terms of Service (which are superseded by the BAAs) to establish that Segment and Criteo have the *capability* to use the data for their own commercial benefit. *See* Opp. at 33−34. The instant matter is readily distinguishable from *Tate.* Unlike the vendor's Terms of Service at issue in *Tate*, which expressly reserved the vendor's own right to use client data "as reasonably necessary ... to enhance its provision of services"—the Segment and Criteo BAAs contain no comparable reservation of a right to use PlushCare's data for their own benefit; to the contrary, they restrict use to administrative purposes tied to providing services to PlushCare. *Tate*'s observation that a vendor's personal use of data is irrelevant "regardless of any Business Associate Agreement" turned on that vendor's unrestricted contractual right to use client data for its own product improvement—a right entirely absent from the BAAs here. *See, Tate*, 762 F. Supp. 3d at 956.

Plaintiff attempts to argue that Segment and Criteo *do* have such an unrestricted right by pointing to [redacted] *See* Opp. at 34. But both provisions contemplate *limited* internal use—[redacted] Neither provision authorizes, let alone establishes as fact, the independent commercial exploitation Plaintiff alleges.

Even if Segment and Criteo were *capable* of using the information for their own commercial benefit in defiance of the BAAs, the BAAs nevertheless preclude Plaintiff's CIPA claims because they establish that PlushCare's conduct in providing the data was not willful or intentional. In *Manier v. Triple Lift Inc.*, Case No. 5:25-cv-03223-SSS-DTBx, 2026 WL 1295546, at *3 (C.D. Cal. Apr. 15, 2026) this Court found that a

defendant's internal policies requiring its customers to comply with data laws "reflect an intent against deliberately collecting data without consent" and therefore the plaintiff could not establish the willful and intentional prong of CIPA. *Manier*, 2026 WL 1295546 at *3. Here, the BAAs clearly establish that PlushCare shared data with the expectation that it would not (1) be de-anonymized; and/or (2) be used by Segment and Criteo for their own commercial benefit. Such BAAs establish that there was no intentional or willful conduct and Plaintiff's CIPA claims must be dismissed.[3] *See id.*

The BAAs make clear that PlushCare discloses limited information to <u>contracted vendors</u> for the narrow purpose of data processing and analytics for its own internal use, with users' consent. Because Plaintiffs' allegations to the contrary are pure speculation, Plaintiff's claims should be dismissed.

**D. <u>The Party Consent Exception Applies to Procurement Allegations Under ECPA</u>**

Plaintiff argues that the ECPA exception for parties to the communication does not "apply to a party that procures a third party to intercept a communication." Opp. at p. 25. Such an interpretation of ECPA fails on the merits. The civil cause of action under ECPA authorizes "any person whose ... communication is *intercepted, disclosed, or intentionally used in violation of this chapter*" to "recover from the person or entity ... which engaged in *that violation*." 18 U.S.C. § 2511(1)(a) (emphasis added). While procurement is an independent violation under section 2511(a)(1), the underlying interception must nonetheless violate the statute—and an interception does not violate the statute where there is consent. "The consent defense, under any reading, states that an interception is not unlawful when one party consents . . . [t]he bottom line is that there is no civil cause of action for a procurement theory where the underlying interception is not unlawful under the consent defense." *So v. Hyatt Hotels Corp.*, Case

---

[3] [redacted] Pursuant to *Manier*, this also shows that PlushCare cannot be liable for derivative liability because Segment had no intent for illegal interception. *See* MTD at pp. 39–40.

No. 25 C 10483, 2026 WL 1235036, at *6 (N.D. Ill. May 5, 2026). Further, Plaintiff's interpretation of the statute would lead to "anomalous results" such as all parties to a conversation being liable under ECPA for "procurement" where the parties jointly agree to "procure" a non-party to record the conversation and all parties consent to the recording. *See, id.* This court should decline such a reading and find that the consent exception applies to allegations of procurement and interception. As discussed in PlushCare's Motion to Dismiss, the consent exception applies and the crime-tort exception does not, so Plaintiff's ECPA claim must be dismissed. *See* MTD at 34–38.

## III. CONCLUSION

As set forth in Defendant PlushCare, Inc.'s Motion to Dismiss Plaintiff's First Amended Class Action Complaint and the foregoing Reply in support thereof, Defendant PlushCare respectfully requests that this Honorable Court grant its Motion and Dismiss Plaintiffs' First Amended Class Action Complaint.

Dated: August 21, 2026

**KJC LAW GROUP, A.P.C**

By: */s/ Kevin J. Cole*
Kevin J. Cole
*Attorneys for Defendant*
*PlushCare, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on August 21, 2026, I electronically filed the foregoing document(s) with the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Kevin J. Cole*

Kevin J. Cole